1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          SOUTHERN DISTRICT OF CALIFORNIA

10

11   LEE WESLEY OVERTON,                    Case No.:  17cv25-BEN (BLM)
                              Plaintiff,
12                                          **REPORT AND RECOMMENDATION**
     v.                                     **FOR ORDER GRANTING**
13                                          **PLAINTIFF'S MOTION FOR**
     NANCY A. BERRYHILL, Acting Commissioner **SUMMARY JUDGMENT AND**
14   of Social Security,                    **DENYING DEFENDANT'S MOTION**
                              Defendant.    **FOR SUMMARY JUDGMENT**
15
                                            **ECF Nos. 15 & 18**
16
            Plaintiff Lee Wesley Overton brought this action for judicial review of the Social Security
17
     Commissioner's ("Commissioner") denial of his claim for disability insurance benefits.  ECF Nos.
18
     1 and 15 at 45.  Before the Court are Plaintiff's Motion for Summary Judgment [ECF No. 15
19
     ("Pl.'s Mot.")], Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's
20
     Motion for Summary Judgment [ECF Nos. 18-1 and 19-1[1] ("Def.'s Mot.")],  and Plaintiff's Reply
21

22   ───────────────────────
     [1] Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for
23   Summary Judgment appear on the docket as two documents, numbers 18 & 19.  However, the

                                            1

in Support of his Motion for Summary Judgment [ECF No. 20 ("Pl.'s Reply")].

This Report and Recommendation is submitted to United States District Judge Roger T. Benitez pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED** and Defendant's Cross-Motion for Summary Judgment be **DENIED.**

## **PROCEDURAL BACKGROUND**

On March 19, 2015, Plaintiff filed a Title II application for disability and disability insurance benefits alleging disability beginning on March 31, 2015. See Administrative Record ("AR") at 75-76, 167-168; see also Pl.'s Mot. at 5. The claims were denied initially on August 4, 2015, and upon reconsideration on January 7, 2016, resulting in Plaintiff's request for an administrative hearing on January 14, 2016. AR at 106-109, 113, 119.

On June 9, 2016, a hearing was held before Administrative Law Judge ("ALJ") Robin L. Henrie. Id. at 36-73. Plaintiff and an impartial vocational expert, Victoria Ray, testified at the hearing. Id. at 68-74. In a written decision dated August 24, 2016, ALJ Henrie determined that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. Id. at 21-31. Plaintiff requested review by the Appeals Council. Id. at 1, 14-15. In a letter dated November 9, 2016, the Appeals Council found no basis for reviewing the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner. Id. at 1-3.

On January 6, 2017, Plaintiff filed the instant action seeking judicial review by the federal

---

content of the documents is the same. For clarity, the Court will refer to Defendant's cross-motion and opposition as one document, namely, "Def.'s Mot." and will cite to ECF No. 18-1.

district court.  See ECF No. 1.  On June 7, 2017, Plaintiff filed a Motion for Summary Judgment alleging that the ALJ's "residual functional capacity finding was not supported by substantial evidence and was the product of legal error" and "the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's testimony regarding functional limitations stemming from his impairments."  Pl.'s Mot. at 5.  Defendant filed a timely Cross-Motion for Summary Judgment asserting that the "ALJ correctly evaluated the evidence of record and, most importantly, pointed to substantial evidence in support of her findings that Plaintiff could do less than the full range of light work."  Def.'s Mot. at 7.

## ALJ's DECISION

On August 24, 2016, the ALJ issued a written decision in which she determined that Plaintiff was not disabled as defined in the Social Security Act.  AR at 16-35.  Initially, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 19, 2015, the alleged onset date.[2]  Id. at 22.  She then considered all of Plaintiff's medical impairments and determined that the following impairments were "severe" as defined in the Regulations: "post-traumatic stress disorder, generalized anxiety disorder, sleep apnea, right shoulder degenerative disease, and right knee degenerative joint disease (20 CFR 404.1520(c))."  Id.  At step three, the ALJ found that Plaintiff's medically determinable impairments or combination of impairments did not meet or medically equal the listed impairments.  Id. at 23.  In reaching this decision, the ALJ noted:

---

[2] In her written opinion, the ALJ lists Plaintiff's alleged onset date as March 19, 2014, but the Administrative Record indicates that Plaintiff's alleged onset date was March 31, 2014. AR 75-76, 167-168; see also Pl.'s Mot. at 5.

3

[N]o acceptable medical source in the record opines that the claimant's impairments satisfy the criteria of a listing, including the State agency medical and psychological consultants.

Id. at 23. At step four, the ALJ considered Plaintiff's severe impairments and determined that his residual functional capacity ("RFC") permitted him "to perform light and sedentary unskilled work as defined in 20 CFR 404.1567(b)" which specifically means that Plaintiff's work cannot require "lifting more than 10-20 pounds at a time, on more than an occasional basis; lifting and carrying articles weighing more than 10-20 pounds, on more than a frequent basis; standing or walking more than 60 minutes at one time, and no more than 6 total hours in an 8-hour work day; sitting more than 60 minutes at one time, and no more than 6 total hours in an 8-hour work day." Id. at 25. The ALJ also noted that Plaintiff's work environment should be a "low stress environment" and that Plaintiff cannot do "work that is more than unskilled and low memory." Id. In reaching this decision, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. . . ." Id. at 26.

## STANDARD OF REVIEW

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. Id.; see also Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence is "more than a mere scintilla, but may be less than a preponderance." Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted). It is "relevant evidence that, considering the entire record, a reasonable person might accept as

4

1   adequate to support a conclusion." Id. (citation omitted); see also Howard ex rel. Wolff v.

2   Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "In determining whether the [ALJ's] findings

3   are supported by substantial evidence, [the court] must review the administrative record as a

4   whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's]

5   conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted). Where

6   the evidence can reasonably be construed to support more than one rational interpretation, the

7   court must uphold the ALJ's decision. See Batson, 359 F.3d at 1193. This includes deferring to

8   the ALJ's credibility determinations and resolutions of evidentiary conflicts. See Lewis, 236 F.3d

9   at 509.

10      Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions,

11  the court must set aside the decision if the ALJ failed to apply the proper legal standards in

12  weighing the evidence and reaching his or her decision. See Batson, 359 F.3d at 1193. Section

13  405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's

14  decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social

15  Security Administration for further proceedings. Id.

16                                      **DISCUSSION**

17      Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence and

18  was the product of legal error. Pl.'s Mot. at 15. In support of this argument, Plaintiff makes

19  three arguments. Plaintiff's first argument is that the "ALJ ignored the opinion of a treating

20  source, Dr. Vargas, and thereby fail[ed] to provide 'specific and legitimate' reasons for

21  discounting the opinion of a treating source." Id. at 15. Plaintiff's second argument is that the

22  "ALJ fail[ed] to account for moderate limitations in concentration, persistence and pace by

23  reducing Plaintiff's RFC to 'simple' work, which thereby deprived the Step 5 determination of

                                          5

substantial evidence in support." <u>Id.</u> at 20.  Plaintiff's third argument is that the "ALJ's analysis of Plaintiff's 100% VA disability rating fail[ed] to 'accurately reflect the approaches taken' in the SSA and VA disability systems." <u>Id.</u> at 24.  Finally, Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's testimony regarding his alleged limitations. <u>Id.</u> at 26.

Defendant contends that the ALJ properly evaluated the medical evidence to determine Plaintiff's RFC and that the ALJ "pointed to substantial evidence in support of her findings that Plaintiff could do less than the full range of light work." Def.'s Mot. at 7.  Defendant further contends that the ALJ properly considered evidence of Plaintiff's VA disability rating "because the ALJ validly determined that the rating was not useful to the disability analysis because it was done in April 2014, nearly a year before Plaintiff even claimed he was disabled."  <u>Id.</u> at 14.  Defendant further argues that the VA "determination did not have the benefit of the full record of evidence, including treatment records, State agency doctors' opinions, Plaintiff's subsequent work history, activities of daily living, and the vocational expert testimony." <u>Id.</u>

## A.     <u>The ALJ's RFC Determination Was Not Supported By Substantial Evidence And The ALJ Committed Legal Errors.</u>

Plaintiff argues that the ALJ ignored the opinion of Plaintiff's treating physician, Dr. Diana Vargas, who found that Plaintiff had significant physical and mental limitations. Pl.'s Mot. at 15-20.  Specifically, Plaintiff asserts that on May 5, 2015, Dr. Vargas determined that Plaintiff could not return to work and could not engage in any bending, stooping, or lifting. <u>Id.</u> at 19.  Plaintiff argues:

> The ALJ makes no mention of Dr. Vargas's treatment records or her opinion. The ALJ's failure to mention the treatment relationship or records of Dr. Vargas, and failure to explicitly weigh or assess Dr. Vargas's opinion constituted harmful

17cv25-BEN (BLM)

error. Moreover, the ALJ's failure to evaluate this opinion resulted in a failure to consider the regulatory factors for weighing opinion evidence, which constitutes a failure by the ALJ [to] articulate [] [sic] 'specific and legitimate reasons supported by substantial evidence in the record.'

Id. (internal citations omitted).

Defendant opposes Plaintiff's argument and contends that although the ALJ did not explicitly reject the opinion from Dr. Vargas, "the ALJ credited the State agency doctors who explicitly reviewed Dr. Vargas's opinion and determined that it was not supported by the objective medical evidence of record." Def.'s Mot. at 9 (internal citations omitted). "This finding was, at least, an implicit rejection of Dr. Vargas's opinion and is well-supported by the record as the evidence shows, as the ALJ states, that Plaintiff's ulcerative colitis responded well to treatment." Id. (internal citations omitted). Finally, Defendant argues that "[e]ven if the Court finds that the ALJ erred in this regard, any error was harmless." Id. (internal citations omitted).

## 1.   **Relevant Law**

The opinion of a treating doctor generally should be given more weight than opinions of doctors who do not treat the claimant.  See Turner v. Comm'r. of Soc. Sec., 613 F. 3d 1217, 1222 (9th Cir. 2010) (citing Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995)).  If the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record.  Id. (citing Lester, 81 F.3d at 830-31).  Even when the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may properly reject the treating doctor's opinion only by providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so.  Id. (citing Lester, 81 F.3d at 830-31).  This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making

7

findings." <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007) (quoting <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir. 1988)). "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record." <u>Townsend v. Colvin</u>, 2013 WL 4501476, *6 (C.D. Cal. Aug. 22, 2013) (quoting <u>Lester</u>, 81 F.3d at 830–31; <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999)).

If a treating doctor's opinion is not afforded controlling weight,

> [t]he ALJ must consider the 'length and the treatment relationship and the frequency of examination' as well as the 'nature and extent of the treatment relationship' . . . . In addition, the ALJ must still consider the other relevant factors such as 'the amount of relevant evidence that supports the opinion and the quality of explanation provided' and 'the consistency of the medical opinion with the record as a whole.'

<u>West v. Colvin</u>, 2015 WL 4935491, at *8 (D. Or. Aug. 18, 2015) (quoting <u>Orn</u>, 495 F.3d at 631; 20 C.F.R. §§ 416.927(c); 404.1527(c)).

### 2. **Plaintiff's Medical Records**

The medical records most relevant to this issue come from Dr. Diana Vargas, Dr. Katrina B. Doig, and Dr. R. Masters.

**Dr. Vargas**

The records establish that Dr. Vargas has been Plaintiff's primary care treating physician since at least June 18, 2014 until August 7, 2015, as summarized in relevant detail below. AR

8

416-420; 470-473.

On September 11, 2014, Dr. Vargas saw Plaintiff for a problem with his left shoulder, and ordered an MRI of this shoulder. Id. at 398-399, 405.  Dr. Vargas noted:

> Pt hurt his left shoulder – was referred to Ortho for appointment. Requesting MRI of the left shoulder, was seen by an outside specialist and it was recommended MRI of the shoulder. Hxt of Rotator cuff surgery on both shoulder – done in PA. Smoker – smokes 4 cigarettes for couple of years.

Id. at 405. Dr. Vargas listed Plaintiff's active "problem list" on September 11, 2014 as follows: (1) General Anxiety Disorder diagnosed on 12/29/11; (2) Chronic PTSD diagnosed on 3/1/12; (3) Irritable Bowel Syndrome diagnosed on 10/4/12; (4) Elbow joint pain diagnosed on 1/2/14; and (5) Knee pain diagnosed on 1/2/14; (6) Shoulder joint pain diagnosed on 9/11/14; (7) Fatigue diagnosed on 9/11/14; and (8) Tobacco User diagnosed on 9/11/14. Id. at 406; see also id. at 380. Plaintiff's active medications included:  (1) Temazepam; and (2) Fluoxetine. Id.  Dr. Vargas assessed Plaintiff with "left shoulder pain/hxt of rotator cuff surgery." Id. at 408.  Dr. Vargas also found that Plaintiff had fatigue, and recommended for Plaintiff to check certain lab results including TSH, T4, CMP, CBC and Testosterone.  Id. at 408.  Finally, she advised Plaintiff to quit smoking. Id.

On September 18, 2014, Dr. Vargas notified Plaintiff that she reviewed his lab results and they were normal. Id. at 402. Although Dr. Vargas did not provide psychiatric counseling to Plaintiff as she was his primary care physician, Dr. Vargas worked collaboratively with Plaintiff's treating psychiatrist, Dr. Lampkin, as described herein. Dr. Vargas reminded Plaintiff at his September 18, 2014 appointment that he had a follow-up mental health appointment on September 29, 2014. Id. On September 29, 2014, Plaintiff saw Dr. Emmett Lampkin for a mental health outpatient visit. Id. at 399. Plaintiff's "chief complaint" was that his "Meds don't work, too much stress." Id. Dr. Lampkin noted that he "informed [Plaintiff] that while indeed we expected some antidepressants to improve responses to stress over time, they are not acute relievers of anxiety and should not be seen as such." Id. Dr. Lampkin switched one of Plaintiff's medications

from Citalopram to Fluoxetine. Id. at 401. On October 3, 2014, Dr. Vargas and Andrew Sone, social worker, confirmed receipt of this note. Id. at 402.

On January 13, 2015, Dr. Vargas saw Plaintiff for an "acute problem: Pt presents w muscle weakness, if he lift anything he is extremely sore. Complains of tiredness, fatigue for a couple of months, and lasts all day." Id. at 380. Plaintiff's active medications included: (1) Temazepam; (2) Hyoscyamine Sulfate; and (3) Citalopram Hydrobromide. Id. Dr. Vargas noted that Plaintiff had a "depressed mood" and "muscle cramps, joint pain." Id. at 382. Dr. Vargas ordered a "fatigue/sleep apnea" study and scheduled a follow-up visit after the study to discuss the findings. Id. at 383.

On February 6, 2015, Plaintiff underwent the sleep study, and was diagnosed with severe obstructive sleep apnea. Id. at 361-365. Plaintiff was advised to "maintain lean body weight" and to use "position therapy to prevent supine sleep." Id. Plaintiff was also advised to avoid narcotics and muscle relaxants as they can make sleep apnea worse. Id.

On March 6, 2015, Plaintiff saw the triage nurse at the veteran's walk-in clinic for "acid reflux that ha[d] progressively worsened over the past few weeks." Id. at 366. Plaintiff noted difficulty sleeping. Id. The triage nurse noted that she "spoke with Dr. Vargas regarding symptoms and Veteran was offered prescription for Omeprazole, which he accepts, and was instructed to f/u in clinic in 4 weeks." Id. at 367.

On March 17, 2015, Plaintiff had an appointment with psychiatrist, Dr. Emmett Lampkin. Id. at 358. Plaintiff's "chief complaint" was that he was "seeking solutions to stress." Id. Plaintiff was accompanied by his wife at the appointment and told Dr. Lampkin that he was experiencing increasing stress, mostly from his job. Id. Plaintiff stated that although he was unhappy at work and felt that his employer was "trying to set [him] up for termination," he did not want to leave because he would lose his family health insurance. Id. Plaintiff stated that "he's just going to not return to work and that will be that." Id. Dr. Lampkin indicated in his notes that he

10

"suggested that was probably not the best idea, but could not think of anything in the purview of mental health." Id. Plaintiff's active medications included Hyoscamine Sulfate, Temazepam, and Citalopram Hydrobromide. Id. at 359. Plaintiff's mood was noted as "anxious, expectant" and his insight was "intact but impaired." Id. Dr. Lampkin noted that he "would seek Dr. Vargas's input and include it in [his] decision process." Id. at 360.

On March 19, 2015, Plaintiff visited the primary care nurse triage for "left ear pain 7/10 that has persisted for about 3 weeks." Id. at 356. Plaintiff denied any drainage of his ear, but reported some hearing loss and balance problems. Id. Plaintiff reported still having trouble sleeping notwithstanding the increased dosage of medication as recently prescribed by Dr. Lampkin. Id. On March 19, 2015, Dr. Vargas acknowledged receipt of this note. Id. at 357.

On March 23, 2015, Plaintiff visited the primary care clinic "inquiring about medication for sleep." Id. at 355. Plaintiff indicated that he was having "a great deal of difficulty without the medication." Id. On March 23, 2015, Dr. Lampkin and Dr. Vargas acknowledged receipt of this note. Id.

On March 25, 2015, a nurse, Ms. Tushara Rhodes, completed a nursing progress note for Plaintiff regarding a "walk in" appointment Plaintiff had with a psychiatrist, Dr. Emmett Lampkin, regarding trouble sleeping. Id. at 354. Plaintiff noted that "he has increased dosage on sleeping meds but insomnia persists." Id. Plaintiff further explained that because the sleeping medication was regulated by his mental health provider, he needs to follow-up with his mental health provider, not his primary care doctor. Id. Ms. Rhodes indicated in her note that she informed Plaintiff that she would notify Dr. Lampkin regarding his complaint. Id. On March 26, 2015, Dr. Lampkin, Dr. Vargas, and Social Worker, Andrew M. Sone, acknowledged that they received this nursing progress note. Id.

17cv25-BEN (BLM)

On March 27, 2015, Dr. Vargas treated Plaintiff for an "acute problem" of "acid reflux and vomiting all night." Id. at 348. She stated that Plaintiff still had insomnia and sleep apnea. Id. Dr. Vargas further stated that Plaintiff "report[ed] nightmares of war, strange dreams, PTSD symptoms. All of these symptoms are affecting his job, not performing the way he should. Afraid of loosing [sic] his job due to his PTSD." Id. She also noted that Plaintiff continued with his problems of Irritable Bowel Syndrome, and that Plaintiff had an upcoming follow-up appointment with his gastroenterologist. Id.

On March 27, 2015, Dr. Vargas completed a "primary care work excuse" letter for Plaintiff noting that Plaintiff was able to return to work one month later, on April 27, 2015. Id. Dr. Vargas expanded Plaintiff's active "problem list" to include "Sleep apnea diagnosed on 2/6/15." Id. at 349. Plaintiff's active medications included: (1) Temazepam; (2) Hyoscyamine Sulfate; and (3) Citalopram Hydrobromide. Id. In a section of Dr. Vargas's notes titled "Review of Systems," Plaintiff was negative for "acute distress," but had insomnia and fatigue. Id. Plaintiff's GI/Digestive System note indicates he had "acid reflux, vomiting, irritable bowel syndrome." Id. Plaintiff's Psychiatry System note indicates that he had "depression mood, anxiety." Id. Dr. Vargas recommended that Plaintiff return to her clinic for a follow-up visit in four weeks. Id. at 351. Dr. Vargas prescribed Plaintiff medication for his insomnia, PTSD and reflux. Id. Plaintiff also submitted FMLA paperwork to be completed by Dr. Vargas in connection with this appointment. Id. at 346; 461.

On April 28, 2015, Dr. Vargas saw Plaintiff for an "acute problem" of "bloody stools, bloating, scheduled for colonoscopy tomorrow. Right now on FMLA – request an extension. Hxt of IBS – at one time he was told he had Ulcerative colitis, he will find out tomorrow." Id. at 338-341. Dr. Vargas expanded Plaintiff's active problem list to include Insomnia, diagnosed on

17cv25-BEN (BLM)

3/27/15, and Gastroesophageal reflux disease, diagnosed on 3/27/15. Id. at 338-339. Dr. Vargas further noted that Plaintiff will need a further extension of his FMLA leave for his anxiety disorder and advised Plaintiff to return to pick up the necessary paperwork. Id. at 341. A nursing note from this visit indicates that Plaintiff reported "pain all the time" on a scale of 8 out of 10. Id. at 341-342.

On April 29, 2015, Plaintiff's had a colonoscopy and was found to have a "new diagnosis of Barretts with possible nodular Barretts, and inflammatory bowel disease – likely Crohns colitis. Will follow up path. Will start patient on prednisone 40 mg daily with taper. . . ." Id. at 326. Dr. Ranney also noted that a "large hiatal hernia [was] present." Id. at 327. The indication for Plaintiff's procedure was "diarrhea, rectal bleeding, GERD, bloating." Id.

On May 5, 2015, Dr. Vargas completed a "Primary Care Work Excuse" letter for Plaintiff indicating that based on his April 28, 2015 appointment, he was unable to return to work for an undetermined time. Id. at 460. Dr. Vargas noted that Plaintiff had the following restrictions: "No bending, No stooping, No lifting." Id. Dr. Vargas further noted that Plaintiff has been diagnosed with Crohn's Disease and Barrett's esophagus, and that he will require medical visits during the year and visits to specialty clinics. Id.

Plaintiff saw Dr. Vargas on August 7, 2015 for a primary care follow-up. Id. at 470. Dr. Vargas noted that Plaintiff's Irritable Bowel Syndrome was stable on Mesolamine, and she ordered a refill of that medication. Id. She also noted that Plaintiff continued to have insomnia and she ordered a refill of Trazodone. Id. Finally, she prescribed Plaintiff medicine for his bronchitis. Id. Dr. Vargas also noted that Plaintiff was moving out of the country to Mexico, but suggested that he should return to a lab and have his annual "ACA" exam in eleven months. Id. at 473. Dr. Vargas expanded Plaintiff's computerized problem list to include Hematochezia,

13

1  diagnosed on 4/28/15, and Chronic Colitis, diagnosed on 5/5/15. Id. at 471.

2  **Dr. Doig**

3        On August 3, 2015, Dr. Katrina Doig, a state agency medical examiner, reviewed Plaintiff's

4  medical records and completed a Physical Residual Functional Capacity Assessment ("Physical

5  RFC Assessment"). Id. at 81-84. Dr. Doig concluded that Plaintiff was "not disabled." Id. at 87-

6  88. Dr. Doig found that Plaintiff had some exertional limitations. Id. at 81-84. Dr. Doig opined

7  that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. Id. at 81. Dr.

8  Doig opined that Plaintiff could stand/sit/walk for approximately 6 hours in an 8-hour workday.

9  Id. Dr. Doig also found that Plaintiff had certain postural limitations which allowed him to

10 occasionally climb ladders/ ropes/scaffolds; frequently crawl; and frequently reach overhead

11 with the left upper extremity. Id. However, Dr. Doig opined that Plaintiff had an "unlimited"

12 ability to climb ramps/stairs; balance; stoop (i.e., bend at the waist); kneel; and crouch (i.e.,

13 bending at the knees). Id. at 81-82. Dr. Doig noted that Plaintiff had environmental limitations

14 and that he should "avoid concentrated exposure" to "noise" and "hazards (such as machinery,

15 heights, etc.)." Id. at 82.

16       Dr. Doig found that Plaintiff's "alleged symptoms of pain, weakness, and fatigue can

17 reasonably be attributable to a medically determinable impairment." Id. at 83. She opined that

18 Plaintiff's "symptoms and limitations are partially credible as the alleged severity is not fully

19 supported by the objective findings." Id. Dr. Doig also opined that the "alleged symptom of

20 bleeding from rectum can reasonably be attributable to a medically determinable impairment as

21 claimant has been diagnosed with inflammatory bowel disease." Id. Regarding Plaintiff's

22 shoulder, Dr. Doig noted that Plaintiff had a "remote hx [history] of rotatory cuff surgery on

23 both shoulders." Id. Dr. Doig summarized in medical shorthand Plaintiff's history of appointments

14

for his shoulder injury from July 2014, September 2014, January 2015, March 2015 and July 2015. Id. Dr. Doig concluded that Plaintiff "had no difficulty sitting, standing, walking, using hands, or writing." Id. Regarding Plaintiff's gastrointestinal issues, Dr. Doig noted that Plaintiff had a history of colitis, Barretts disease, Inflammatory Bowel Disease. Id. Dr. Doig also noted that Plaintiff reported improvement with medication at the June 2015 follow-up visit and that his symptoms were controlled. Id. Dr. Doig further noted Plaintiff's history of sleep apnea treated with CPAP, but found "no evidence of functional limitations." Id. Finally, Dr. Doig noted that in May 2015, Dr. Vargas found Plaintiff limited to "no bending, no stooping, [and] no lifting." Id. at 84. Dr. Doig gave Dr. Vargas's opinion "some but not controlling weight as this degree of limitation is not supported by the objective medical evidence of record." Id.

**Dr. Masters**

On January 6, 2016, Dr. R. Masters, a state agency medical examiner, reviewed Plaintiff's medical records and completed another Physical RFC Assessment. Id. at 97-100. Dr. Masters Physical RFC Assessment is identical to Dr. Doig's, except that Dr. Masters did not find Plaintiff to have a limitation in exposure to loud noises. Id. at 99. Dr. Masters also concluded that Plaintiff was "not disabled." Id. at 104-105.

### 3. Analysis

The ALJ assigned "significant weight" to the opinions of Plaintiff's non-examining, non-treating physicians, Dr. Doig and Dr. Masters, reasoning as follows:

> Upon evaluating and weighing the opinion evidence in the record, the undersigned gives significant weight to the opinions from the State agency medical consultants that the claimant can perform light work activity (Exhibits 2A and 4A). The undersigned acknowledges that the opinions are from non-examining doctors; however, the opinions are consistent with the objective clinical findings and the treatment record as a whole. Moreover, these doctors are experts in the Social Security disability program. The undersigned has also included additional

15

limitations/restrictions in the residual functional capacity consistent with other medical evidence and giving the benefit to some of the claimant's allegation of symptoms.

Id. at 29-30.

When the treating doctor's opinion is contradicted, the ALJ may reject the treating doctor's opinion by providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. See Turner, 613 F.3d at 1222; Lester, 81 F.3d at 830–31. Plaintiff's medical records indicate that Dr. Vargas was his treating physician for more than one year, as explained in detail above, and Dr. Vargas found that Plaintiff had multiple medical conditions that were ongoing and severe including: (1) General Anxiety Disorder; (2) Chronic PTSD; (3) Irritable Bowel Syndrome; (4) Elbow joint pain; (5) Knee pain; (6) Shoulder joint pain; (7) Insomnia; (8) Gastroesophageal reflux disease; (9) Hematochezia; and (10) Chronic Colitis. AR at 338-339, 348-349, 380, 406, 471. The record also shows that Plaintiff was prescribed medications, which included Temazepam, Fluoxetine, Hyoscamine Sulfate, Trazodone, Mesolamine, and Omeprazole, that Plaintiff was compliant with medications, but sometimes showed minimal improvement. See id. at 354 (March 25, 2015 nursing note indicates that Plaintiff reported "increased dosage on sleeping meds but insomnia persists."); 399 (Plaintiff complained that his "Meds don't work, too much stress" and Plaintiff's treating psychiatrist Dr. Lampkin noted "[Plaintiff] can't figure out why these [anxiety] meds work for a while, then stop being effective."); see also id. at 348-349, 351, 356, 359, 367, 405, 470. Dr. Vargas also provided "work excuse" letters for Plaintiff and completed necessary paperwork for Plaintiff's FMLA leave. See id. at 348 (Dr. Vargas's March 27, 2015 "primary care work excuse" letter provided that Plaintiff was able to return to work one month later, on April 27, 2015); 460 (Dr. Vargas's May 5, 2015 "primary work excuse" letter provided that Plaintiff was unable to return

17cv25-BEN (BLM)

to work for an "undetermined time" and that Plaintiff had restrictions of "no bending, no stooping, no lifting").

Dr. Vargas's findings are consistent with the VA's finding that Plaintiff is 100% disabled due to PTSD, and with the findings of other examining physicians and providers. See id. at 172-173 (VA's April 30, 2014 Rating Decision that Plaintiff has a service-connected disability for PTSD effective March 25, 2014); 400 (Dr. Lampkin's finding that Plaintiff's mood was "anxious, irritated"); 430 (Dr. Wajahat Mirza's note that Plaintiff has a history of "anxiety and VA disability for PTSD."); and 437-443 (Clinical Psychologist Dr. Sabrina O'Kennon's March 25, 2014 examination and conclusion confirming Plaintiff's mental health diagnoses of PTSD and Chronic fatigue syndrome and noting Plaintiff's "occupational and social impairment" with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks . . .").

The ALJ's failure to mention Dr. Vargas's treatment records and/or her opinion constitutes harmful error. Lester, 81 F.3d at 830-31. Not only did the ALJ fail to provide "specific and legitimate reasons" supported by substantial evidence in the record to reject Dr. Vargas's opinion, the ALJ did not even acknowledge Dr. Vargas's opinion or that she was Plaintiff's primary treating physician for over one year, during a portion of the relevant time period. While the ALJ concluded that she chose to give significant weight to Plaintiff's non-examining, non-treating physicians, Dr. Doig and Dr. Masters, the ALJ failed to explain why Dr. Vargas's opinion was given less (or no) weight. AR at 29-30. Defendant contends in the Motion for Summary Judgment that the ALJ credited the State agency examiners who reviewed Dr. Vargas opinion, and this was "at least, an implicit rejection of Dr. Vargas's opinion and is well-supported by the record as the evidence shows. . . ." Def's Mot. at 8-9. However, this Court cannot and will not

speculate regarding the ALJ's reasoning or make "post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225–26 (9th Cir. 2009) (stating that "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking").

Further, the ALJ's failure to discuss Dr. Vargas's opinion in her decision shows that the ALJ did not consider the "length of the treatment relationship" between Dr. Vargas and Plaintiff, the frequency of the examinations, and the medical evidence that supports Dr. Vargas's opinion. See West, 2015 WL 4935491, at *8; Pierce v. Colvin, 2014 WL 2159388, at *2 (C.D. Cal. May 23, 2014) (stating that "[e]ven when not entitled to controlling weight, 'treating source medical opinions are still entitled to deference and must be weighed' in light of (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency with other evidence in the record; and (6) the area of specialization.") (citing Edlund v. Massanari, 253 F.3d 1152, 1157 n.6 (9th Cir. 2001)). Accordingly, the Court concludes that the ALJ did not provide "specific and legitimate reasons that are supported by substantial evidence in the record" for rejecting Dr. Vargas's opinion, and finds that the ALJ erred in doing so. See Lester 81 F.3d at 830–31.

Finally, the ALJ misstated the record when she found that "there is no evidence of any significant side effects from prescribed medications and the claimant does not take any pain medication (Exhibit 16E)." AR 29; see Reddick 157 F.3d at 722-24 (ALJ's "findings were unsupported by substantial evidence based on the record as a whole" when "[i]n essence, the

ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports [and h]is paraphrasing of record material is not entirely accurate regarding the content or tone of the record."); see also White v. Colvin, 2014 WL 4187823, at *4 (C.D. Cal. Aug. 21, 2014) (finding error where the ALJ misstated the record and ignored contradictory evidence).]   Here, the ALJ concluded "[a]s shown in the most recent VA progress notes from 2016, the clamaint's doctors have adequately treated his medical problems with a conservative regimen of prescribed medications without complication. (Exhibit 7F)." AR 29.   Although Plaintiff's medical records indicate that he discontinued Naproxen for pain on December 10, 2016 [AR 526], Plaintiff records indicate that starting on May 5, 2016, he was actively taking Meloxican "for pain" once a day. AR 525.   Accordingly, at the time that the ALJ wrote her decision, Plaintiff was taking pain medication, and the ALJ misstated the record. White, 2014 WL 4187823, at *4.

The Court concludes that the ALJ did not provide "specific and legitimate reasons that are supported by substantial evidence in the record" for rejecting Dr. Vargas's opinion, and finds that the ALJ erred in doing so. See Lester 81 F.3d at 830–31. The Court further finds that the error is not harmless.   Harmless error occurs if the error is "inconsequential to the ultimate nondisability determination."  See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); see also Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055–56 (9th Cir. 2006). Errors that do not affect the ultimate result are harmless.  See Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007).  "[A] reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing Stout, 454 F.3d at 1055–56).  Here, had the ALJ fully credited Dr. Vargas's opinion

of Plaintiff's limitations and impairments, Plaintiff's RFC would have differed significantly, and the ALJ likely would have found that Plaintiff is disabled. The Court thus cannot "confidently conclude that no reasonable ALJ . . . could have reached a different disability determination." See Marsh, 792 F.3d 1170; Stout, 454 F.3d at 1055–56.

Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment on this issue be **GRANTED**, and Defendant's Cross-Motion for Summary Judgment on this issue be **DENIED**.

### B. <u>The ALJ Failed to Evaluate Dr. Liss's Opinion Evidence.</u>

Plaintiff argues that the "ALJ fail[ed] to account for moderate limitations in concentration, persistence and pace ["CPP"] by reducing Plaintiff's RFC to 'simple' work, which thereby deprived the Step 5 determination of substantial evidence in support." Pl.'s Mot. at 20. In connection with this argument, Plaintiff argues that "the ALJ failed to weigh the only opinion in the record containing limitations in CPP, that of the SAPC, Dr. Liss." Id. at 23.

Defendant opposes Plaintiff's argument and contends that the "ALJ cited to substantial evidence in support of his mental RFC findings by citing to the treatment notes, which showed benign mental status examination findings throughout the relevant period." Def.'s Mot. at 10. Defendant concedes that while "the ALJ may have erred [in failing to explicitly acknowledge Dr. Liss's opinion], any error is harmless as Dr. Liss's opinion supports the ALJ's decision." Id. at 12. Defendant contends that although Dr. Liss found "moderate limitations in Plaintiff's ability to maintain concentration and attention for extended periods," ultimately he found that "Plaintiff could attend to and perform simple tasks for 2+ hours without special supervision." Id. Defendant argues that the ALJ's RFC findings fully accommodate Dr. Liss's opinion. Id.

/ / /

### 1. Relevant Law

An ALJ is required to consider as opinion evidence the findings of state agency medical consultants; the ALJ also is required to explain in his decision the weight given to such opinions. 20 C.F.R. § 416.927(f)(2)(i)-(ii); see also SSR 96-6P (1996) (stating that an ALJ "may not ignore" the opinions of state agency medical consultants "and must explain the weight given to the opinions in their decisions").

### 2. Plaintiff's Mental RFC Assessment

**Dr. Liss**

On January 5, 2016, Robert Liss, Ph.D., a state agency medical examiner, reviewed Plaintiff's medical records and completed a Mental RFC Assessment. AR at 95-97. Dr. Liss's Mental RFC Assessment found that Plaintiff had one or more medically determinable impairments including Major Joint Disorder, Inflammatory Bowel Disease and Anxiety Disorders. Id. at 95. Dr. Liss opined that Plaintiff's anxiety disorders met the following criteria: (1) Plaintiff had "mild" restrictions of activities of daily living; (2) Plaintiff had "moderate" difficulty in maintaining social functioning; and (3) Plaintiff had "moderate" difficulty in maintaining concentration, persistence or pace. Id. Dr. Liss noted that "ADLs indicate limitations in CPP and social which are considered reasonable given MDIs established in MER. . . Overall, the totality of evidence indicates that clmt would be capable of simple work tasks with limited public contact." Id. at 96. Dr. Liss explained that "[t]he claimant's mental condition is not currently of listing level severity but does impose moderate functional limitations." Id. at 102. Dr. Liss further opined that Plaintiff would "function best in work situations that preclude ongoing interaction with the public" and that Plaintiff "may exhibit variable difficulty in getting along with co-workers due to psychiatric sxs; therefore a work environment with low social stimulation is recommended." Id. at 103.

**3.    Analysis**

The ALJ failed to mention or evaluate Dr. Liss's opinion in her decision. AR 20-31. Defendant attempts to provide a post-hoc rationalization that, notwithstanding Dr. Liss's finding of moderate limitations in Plaintiff's ability to maintain concentration and attention for extended periods, ultimately Dr. Liss opined that Plaintiff could attend to and perform simple tasks. Def.'s Mot. at 12. However, Defendant's post-hoc rationalization fails to remedy the ALJ's legal error in failing to accurately include in her decision the limitations found by Dr. Liss or to adequately explain the reasons for the reduction in the weight she gave to Dr. Liss's opinion. 20 C.F.R. § 416.927(f)(2)(i)-(ii); see also SSR 96-6P (1996).  The ALJ's failure to consider the opinion of state agency consultant Dr. Liss is not harmless because the opinion is directly relevant to the ultimate issue of whether Plaintiff can perform light work. Sawyer v. Astrue, 303 F. App'x 453, 455 (9th Cir. 2008) (ALJ committed legal error in failing to consider or otherwise explain the weight given to state agency medical consultants' opinions).

The Court therefore **RECOMMENDS** that Plaintiff's Motion for Summary Judgment on this issue be **GRANTED**, and Defendant's Cross-Motion for Summary Judgment on this issue be **DENIED**.

**C.    The ALJ Did Not Give Proper Weight to Plaintiff's Disability Rating as Determined by the VA.**

Plaintiff argues that the ALJ did not adequately weigh Plaintiff's 100% VA disability rating and that the ALJ failed to "accurately reflect the approaches taken under the two systems." Pl.'s Mot. at 24-25 (internal citations omitted).  Plaintiff asserts that the ALJ erred in giving Plaintiff's 100% VA disability rating for his PTSD "little weight" because of the "different standards" in the two programs. Id. at 25.  Plaintiff further argues that the ALJ's finding that the VA rating occurred

in April 2014 while Plaintiff was still working at the U.S. Postal Service, and not during the relevant time period, also fails. Id. Plaintiff acknowledges that the VA rating occurred "roughly 11 months prior to his AOD and resignation from the U.S. Postal Service," but Plaintiff was troubled by his PTSD well before his resignation and ultimately resigned due to those same impairments. Id. at 26.

Defendant opposes Plaintiff's argument and contends that the "ALJ validly determined that the [VA] rating was not useful to the disability analysis because it was done in April 2014, nearly a full year before Plaintiff even claimed that he was disabled." Def.'s Mot. at 14. Defendant further responds to Plaintiff's argument noting that "the VA determination did not have the benefit of the full record of evidence, including treatment records, State agency doctors' opinions, Plaintiff's subsequent work history, activities of daily living, and the vocational expert testimony." Id. Defendant asserts that the medical evidence (specifically, Dr. Lampkin's notes from Plaintiff's March 17, 2015 appointment) does not support Plaintiff's claim that he resigned because his PTSD worsened between April 2014 and March 2015. Id.

### 1. **Relevant Law**

"[A]lthough a VA rating of disability does not necessarily compel the SSA to reach an identical result, 20 C.F.R. § 404.1504, the ALJ must consider the VA's finding in reaching his decision." McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002). When considering a VA determination of disability, the ALJ must give great weight to the decision because "of the marked similarity between these two federal disability programs." Id. Specifically,

> [b]oth programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims. . . . Both programs have a detailed regulatory scheme that promotes consistency in adjudication of claims.

17cv25-BEN (BLM)

Both are administered by the federal government, and they share a common incentive to weed out meritless claims.

Id. However, because the VA and SSA criteria for determining disability are not identical, "the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." Id.

## 2. **Plaintiff's VA Records**

On April 30, 2014, the VA issued its Rating Decision in which the VA determined that Plaintiff was 100% disabled effective March 25, 2014. AR at 172-173. Specifically, the VA found that Plaintiff had a disability rating of 100% for PTSD and 30% for contact dermatitis and maculopapular rash. Id. at 172–175. The VA further determined that Plaintiff was entitled to "special monthly compensation(s) based on the total service connected disability with additional service connected disabilities independently ratable as 60 percent or more is granted from March 25, 2014." Id. at 172. The VA found that the 100% rating for PTSD, which was increased from 70% assessed earlier, was based on Plaintiff's persistent danger of hurting self; persistent danger of hurting others; difficulty in adapting to work; difficulty in adapting to stressful circumstances; suicidal ideation; impaired impulse control; difficulty in adapting to a worklike setting; difficulty in establishing and maintain effective work and social relationships; mild memory loss; depressed mood; chronic sleep impairment; anxiety; and occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks. Id. at 173. The VA also found that Plaintiff was "competent to manage [his] financial affairs." Id. at 173-174.

/ / /

/ / /

### 3.    **Analysis**

The ALJ assigned "little weight" to the above disability rating by the VA.  Id. at 30.  The

ALJ stated that "[t]he criteria for the two separate disability programs have completely different

standards for establishing disability." Id.  The ALJ further reasoned as follows:

> The VA rating of disability does not necessarily compel the undersigned to reach
> an identical result. Moreover, the VA disability decision was made in April 2014
> while the claimant was still working and not during the relevant period in this case.
> The VA determination did not have the medical evidence before the undersigned.
> The undersigned has also had the benefit of the opinions of the State agency
> medical and psychological consultants, evidence of the claimant's work history,
> and post-resignation activities, and the input of the vocational expert. The VA
> determination did not have such evidence for its consideration. The undersigned
> also finds that the VA disability rating concerning the claimant's mental condition
> is inconsistent with the medical record before the undersigned, including the VA
> progress notes, other opinion evidence, and the claimant's extensive daily
> activities. The record shows that treatment has stabilized the claimant's mental
> conditions. (Exhibits 3F-7F). Thus, the medical evidence does not provide a basis
> to find limitations greater than the assessed residual functional capacity finding.

Id.

Although the ALJ did mention the VA's disability rating, she did not provide persuasive,

specific, and valid reasons supported by the record for assigning "less weight" to the rating.  To

the extent the ALJ asserts that she assigned less weight to the VA disability rating because the

criteria used by the VA is not the same as the one used by the Social Security Administration,

this is not a valid reason to discount the VA's disability rating.  See id. at 34; Underhill v. Berryhill,

—F. App'x—, 2017 WL 1101098, at *1 (9th Cir. 2017) (concluding that the fact that the rating

system used by the VA is not the same as the system used by the Social Security Administration,

is not a valid reason to discount the VA's disability rating); Berry v. Astrue, 622 F.3d 1228, 1236

(9th Cir. 2010) (concluding that the fact that the SSA is not bound by the VA's determination

because the governing rules differ is not a "persuasive, specific, valid reason[ ]" for discounting the VA determination).

The ALJ's other stated reason that "the VA disability decision was made in April 2014 while the claimant was still working and not during the relevant time period in this case," lacks any specifics or explanation, and therefore is not a "persuasive, specific, valid reason" for discounting the VA's disability rating. See AR at 30; see also Clark v. Colvin, 2016 WL 4238515, at *5 (W.D. Wash. Aug. 11, 2016) (finding that the ALJ failed to provide persuasive, specific, or valid reasons to give little weight to the VA disability rating, where the ALJ rejected the VA disability rating as inconsistent with the ALJ's determination that Plaintiff's PTSD was not severe; reasoning that "the ALJ did not cite to any medical evidence and only made a general reference to 'reasons discussed above'"); Geiger v. Colvin, 2014 WL 1328511, at *5 (W.D. Wash. Mar. 31, 2014) (rejecting the ALJ's assignment of "limited weight" to the VA's disability rating as "not well supported by the record. . . ."). Here, Plaintiff filed a Title II application for disability and disability insurance benefits alleging disability beginning on March 31, 2015 due to his PTSD, among other illnesses, injuries and conditions. See AR at 167-168. Plaintiff concedes in his Motion that the VA rating was issued approximately eleven months prior to Plaintiff's resignation from his job at the U.S. Postal Service. Pl.'s Mot. at 26. However, Plaintiff further argues that the PTSD ultimately resulted in Plaintiff's resignation eleven months later, and the ALJ failed to set forth substantial evidence supporting her decision to discount the 100% VA rating merely because Plaintiff continued to work. Id. The Court agrees that the ALJ failed to provide persuasive, specific, or valid reasons to discount the VA's 100% disability rating due to Plaintiff's PTSD merely because Plaintiff continued to work. Id. at 190-191. The ALJ failed to cite to any

17cv25-BEN (BLM)

medical records and failed to identify any specific opinions, diagnoses, or treatments that changes between the time of the VA determination and the ALJ decision.

The persuasiveness and validity of the ALJ's decision is further undermined by the opinion of Plaintiff's treating physician, Dr. Vargas, who agreed with the VA's finding that Plaintiff is 100% disabled due to PTSD, and completed FMLA paperwork for Plaintiff noting that he could not return to work for an indefinite period. <u>Id.</u> at 460. As discussed in detail above, Dr. Vargas's opinion was supported by her treatment notes, Plaintiff's subjective complaints, and reports from other medical providers who examined Plaintiff. Again, the ALJ failed to address Dr. Vargas's opinion.

Defendant's argument that the ALJ properly discounted the VA's disability rating because the ALJ "did not have the medical evidence before the undersigned" also fails. AR at 30. In support of her conclusion that Plaintiff's VA disability rating is inconsistent with the medical record, the ALJ cited to exhibits 3F – 7F in the Administrative Record, with no reasoning or analysis in support thereof. <u>Id.</u> at 30. The exhibits cited by the ALJ are Plaintiff's medical records dated March 25, 2014 through July 7, 2016, from the Department of Veterans Affairs and from the Chula Vista Clinic. <u>Id.</u> at 282-606. Even if the ALJ's conclusion is correct that the evidence of record shows that treatment has stabilized the claimant's mental conditions, the ALJ has failed to identify specific records or opinions and failed to provide persuasive, specific or valid reasons to discount the VA's 100% disability rating due to Plaintiff's PTSD. Defendant attempts in the Cross-Motion for Summary Judgment to provide post-hoc rationalizations for the ALJ's conclusion by citing Dr. Lampkin's progress notes from Plaintiff's March 17, 2015 treatment. Def.'s Mot. at 14-15. However, the ALJ did not specifically mention Dr. Lampkin or his March 17, 2015 treatment notes, and Defendant's post-hoc rationalizations fail to remedy the ALJ's legal error

in failing to articulate persuasive, specific, valid reasons for rejecting the VA disability ratings. See Bray, 554 F.3d at 1225–26 (stating that "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking"); Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency"); Pohlmann v. Colvin, 2017 WL 2123853, at *9 (S.D. Cal. May 12, 2017) (finding that "the Commissioner's post hoc rationalizations d[id] not remedy the ALJ's legal error in failing to articulate persuasive, specific, valid reasons for rejecting the VA disability ratings.").

For the reasons stated above and based on the record as a whole, the Court concludes that the ALJ did not provide persuasive, specific and valid reasons for giving less weight to the VA's 100% disability rating, and thereby committed a legal error.  See Taylor v. Colvin, 196 F. Supp. 3d 1120, 1127 (N.D. Cal. Jul. 25, 2016) (finding that the ALJ erred by affording "little weight" to the VA's determination that plaintiff was 100% disabled and housebound due to PTSD, where the ALJ did not provide a persuasive, specific, and valid reason supported by the record for discounting the VA's determination); Hanes v. Colvin, 2015 WL 5177763, at *3 (S.D. Cal. Mar. 16, 2015) (finding that the ALJ erred in failing to consider the VA's disability rating of 100% for plaintiff's PTSD, where the ALJ did not articulate specific and legitimate reasons for rejecting the rating).

The Court further finds that the error is not harmless.  Here, had the ALJ fully credited the 100% disability rating by the VA, Plaintiff's RFC would have differed significantly, and the ALJ likely would have found that Plaintiff is disabled.  See Dodson v. Colvin, 2015 WL 5730568, at *6 (W.D. Wash. Sept. 30, 2015) (concluding that "had the ALJ credited fully the 100%

disability determination rating by the VA, plaintiff's RFC would have been different and he likely would have been found disabled."). The Court thus cannot "confidently conclude that no reasonable ALJ . . . could have reached a different disability determination." See Marsh, 792 F.3d 1170; Stout, 454 F.3d at 1055–56.

The Court therefore **RECOMMENDS** that Plaintiff's Motion for Summary Judgment on this issue be **GRANTED**, and Defendant's Cross-Motion for Summary Judgment on this issue be **DENIED**.

### D. **Plaintiff's Credibility**

Plaintiff alleges the ALJ erred in assessing Plaintiff's credibility because she failed to set forth clear and convincing reasons supported by the record to discount Plaintiff's testimony. See Pl.'s Mot. at 26-29. Defendant asserts that the ALJ properly found Plaintiff's testimony not fully credible. Def.'s Mot. at 15-18.

The Ninth Circuit has established a two-part test for evaluating a claimant's subjective symptoms. See Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (citation and internal quotation marks omitted). The claimant, however, need not prove that the impairment reasonably could be expected to produce the alleged degree of pain or other symptoms; the claimant need only prove that the impairment reasonably could be expected to produce some degree of pain or other symptom. Id. If the claimant satisfies the first element and there is no evidence of malingering, then the ALJ "can [only] reject the claimant's testimony about the severity of her symptoms . . . by offering specific, clear and convincing reasons for doing so." Id. (citation and internal quotation marks omitted). "General

17cv25-BEN (BLM)

findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing the claimant's testimony, "an ALJ may consider . . . reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Orn, 495 F.3d at 636 (internal quotation marks and citation omitted). An ALJ also may consider the claimant's work record and testimony from doctors and third parties regarding the "nature, severity, and effect of the symptoms" of which the claimant complains. Thomas, 278 F.3d at 958–59; see also 20 C.F.R. § 404.1529(c). If the ALJ's finding is supported by substantial evidence, the court may not second-guess his or her decision. See Thomas, 278 F.3d at 959; Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1163 (9th Cir. 2008) (where the ALJ's credibility assessment is supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting a claimant's testimony were improper).

Neither party contests the ALJ's determination that Plaintiff has the following impairments: "post-traumatic stress disorder, generalized anxiety disorder, sleep apnea, right shoulder degenerative joint disease, and right knee degenerative joint disease." AR at 22; see also Pl.'s Mot.; Def.'s Mot. Because the ALJ concluded that Plaintiff's "medically determinable impartments could reasonably be expected to cause the alleged symptoms," a finding which is not contested by either party, the first prong of the ALJ's inquiry regarding Plaintiff's subjective

17cv25-BEN (BLM)

symptoms is satisfied.  See AR at 26; see also Lingerfelter, 504 F.3d at 1036; Pl.'s Mot.; Pl.'s Reply; Def.'s Mot.  Further, neither party alleges that the ALJ found that Plaintiff was malingering.  See Pl.'s Mot.; Def.'s Mot.  As a result, the Court must determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective claims regarding his symptoms.  See Lingenfelter, 504 F.3d at 1036.

Plaintiff challenges all of the reasons provided by the ALJ in finding him not fully credible. See Pl.'s Mot. at 26-29. The Court will consider Plaintiff's challenges below.

### 1. Objective Medical Evidence

The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [her] decision." AR at 26.  With regards to Plaintiff's claim that he is unable to "work full-time due to symptoms and limitations," the ALJ stated:

> The medical evidence in this case does not fully support the claimant's allegations to the extent alleged. Upon determining the residual functional capacity, the undersigned does not adopt all of the claimant's subjective allegations concerning the intensity, persistence, and limiting effects of symptoms mainly because they are out of proportion with the record as a whole, and therefore not consistent with the medical evidence.

Id. at 27.  With regard to Plaintiff's physical impairments, the ALJ focused on Plaintiff's medical care and found that he received "conservative treatment" which does not support his claim to disability. Id. at 27-28.  The ALJ also noted that Plaintiff's "unremarkable physical examination findings" do not support his claim. Id. at 28.  With regards to Plaintiff's mental impairments, the ALJ focused on the facts that Plaintiff was able to work until April 2015, his mental health treatment was conservative and effective, he does not have a history of psychiatric

31

hospitalizations, and his medication appears to adequately control the symptoms. Id. at 28. The ALJ also found that the medical evidence does not support Plaintiff's "allegations of extremely limited activities of daily living." Id. at 29.

Notably, the ALJ never clearly identified the specific parts of Plaintiff's testimony and/or subjective allegations that she did not find credible. Moreover, the ALJ failed to identify what medical evidence conflicted with the Plaintiff's testimony and/or subjective allegations.[3] Notwithstanding this, upon the Court's own review of the ALJ's opinion and the underlying medical record, it appears that the ALJ provided nothing more than general reasons for discounting Plaintiff's claim that he cannot work full-time. The Court finds that the ALJ's reasoning and analysis are insufficient and constitute legal error. See, e.g., Reddick, 157 F.3d at 722 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."); see also Thomas v. Barnhart, 278 F.3d at 958 (the ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony.").

### 2. Plaintiff's Activities of Daily Living

Plaintiff argues that the ALJ erred in finding that Plaintiff's allegations of the severity of his impairments were inconsistent with his activities of daily living. Pl.'s Mot. at 27. Plaintiff explains that many activities of daily living may not transfer to a work environment, and a "claimant need not be bed-ridden or 'completely incapacitated' to qualify for benefits." Id.

---

[3] On the contrary, there is objective medical evidence, that the ALJ ignored, which supports Plaintiff's limitations. See, e.g., AR 460 (Dr. Vargas's May 5, 2015 "primary work excuse" letter provided that Plaintiff was unable to return to work for an "undetermined time" and that Plaintiff had restrictions of "no bending, no stooping, no lifting").

(internal citations omitted).  In determining a plaintiff's credibility, an ALJ may consider whether a plaintiff's daily activities are consistent with the asserted symptoms.  See Thomas, 278 F.3d at 958–59 (citation omitted).   While the fact that a plaintiff can participate in various daily activities does not necessarily detract from the plaintiff's credibility as to his specific limitations or overall disability, "a negative inference is permissible where the activities contradict the other testimony of the claimant, or where the activities are of a nature and extent to reflect transferable work skills." Elizondo v. Astrue, 2010 WL 3432261, at *5 (E.D. Cal. Aug. 31, 2010).  "Daily activities support an adverse credibility finding if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions or skills that are transferable to a work setting."  Id. (citing Orn, 495 F.3d at 639; Morgan, 169 F.3d at 600; Thomas, 278 F.3d at 959).  "A claimant's performance of chores such as preparing meals, cleaning house, doing laundry, shopping, occasional childcare, and interacting with others has been considered sufficient to support an adverse credibility finding when performed for a substantial portion of the day." Elizondo, 2010 WL 3432261, at *5 (citing Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008); Burch v. Barnhart, 400 F.3d 676, 680–81 (9th Cir. 2005); Thomas, 278 F.3d at 959; Morgan, 169 F.3d at 600; Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990)).

With regards to Plaintiff's activities of daily living, the ALJ stated:

The claimant also reports no difficulty with walking, climbing stairs, dressing, bathing, or running errands alone, and engaging in moderate exercise (Exhibit 1F).

His leisure activities are reported as exercising 4-5 times per week, listening to music, computer use for information, camping, fishing, and hiking (Exhibit 7F/43).

Moreover, the medical evidence of record does not fully support the claimant's allegations of extremely limited activities of daily living (Exhibit 9E and testimony). A VA progress note in 2016 reports the claimant spends his day running or bicycling

33

for cardio and lifting weights (Exhibit 7F/56). He also reports painting his mother's house and going on hikes with the Canyoneers or on his own, and doing leather crafts socializing with others (Exhibit 7F/28, 37). He also has plans to participate in guitar clinic, kayaking, and fly fishing (Exhibit 7F/23).

AR at 27-29.

Here, Plaintiff testified at the hearing that he has spent most of the last year at home. AR 62. Plaintiff said he has not been to a movie at the theater for over a year and did not even remember the last time he went to a restaurant. Id. at 61. Plaintiff said he has not been grocery shopping for over a month and a half, but that sometimes he picks something up for his elderly mom if necessary. Id. at 61-62. Plaintiff further testified that occasionally he helps his mom with her laundry, watering her plants, and to "lift heavier boxes." Id. at 62. Plaintiff said that most of his day is spent on the computer, watching television, walking the dog, helping his mom with organization, and reading. Id. at 62-64. Plaintiff said he periodically works out at the gym. Id. at 63. He also goes to church every Sunday. Id. at 65. When the ALJ asked Plaintiff whether in the last year he has had 100% attendance at church, Plaintiff responded that he "would say at least 80%." Id. Plaintiff also testified regarding his PTSD and anxiety and said that "there [were] several occasions" at his old job that "he had too much going on and kind of threw things around. . . pushed a netting cart across the floor one day and toppled a case over." Id. at 66-67. Plaintiff confirmed that he "still deals with this [PTSD and anxiety] every day." Id. at 67. Plaintiff also testified that fatigue was still a serious problem for him. Id. at 48. The ALJ asked Plaintiff to rate his fatigue on a scale of zero to ten and Plaintiff rated it as an eight on the day of the hearing. Id. Plaintiff described his fatigue as feeling "completely unfocused" and said it can cause him to fall asleep on the job, even while people are talking to him. Id. at 47-48. Plaintiff also testified that he suffered from a "serious memory deficit" as recently as the Monday

before the hearing. Id. at 52-53.

Notably, in evaluating Plaintiff's credibility, the ALJ did not discuss, evaluate, or otherwise cite to Plaintiff's testimony at the hearing. The ALJ merely noted that "[Plaintiff] followed along and participated at the hearing in a sufficient manner." Id. at 24. Instead, notwithstanding that Plaintiff's alleged onset date of disability is March 31, 2015 [see Pl.'s Mot. at 5], the ALJ cherry-picked segments of medical notes from Plaintiff's recreational therapy appointments from a narrow date range, February 10, 2016 through May 9, 2016, and ignored other segments of the same notes. See AR 29, 547, 551, 560, 579. For example, although Plaintiff reported some increased physical activity including exercise and fishing at these select appointments, he also continued to report symptoms of his anxiety disorder and PTSD. AR 579 (February 10, 2016 appointment note indicating Plaintiff "wakes up anxious about people being outside his house" and has "thoughts of hurting [his neighbors]. . . ."); AR 547 (Plaintiff's April 28, 2016 appointment noting that Plaintiff "reported continuing PTSD symptoms."); AR 566 (PTSD still listed as a "precaution" notwithstanding Plaintiff report of exercising 4-5 times per week). The ALJ did not discuss or otherwise evaluate Plaintiff's continuing symptoms of anxiety disorder and PTSD, but merely focused on the increase in Plaintiff's exercise and leisure activities. Moreover, the ALJ failed to ask Plaintiff at the hearing about his frequency of exercise and/or the leisure activities listed in these records. On the contrary, at the hearing, Plaintiff said he goes to the gym "periodically" and the ALJ did not ask him any follow-up questions about this. Id. at 63. The ALJ also ignored and failed to address in her written opinion Plaintiff's testimony from the hearing regarding his fatigue and his "serious memory deficit" incident experienced just days before hearing. Id. at 47-48, 52-53.

17cv25-BEN (BLM)

The ALJ neither described specific activities that Plaintiff engaged in that would bear on his ability to engage in the activities of the workplace, nor discussed whether Plaintiff engaged in those activities for a substantial part of the day and on a daily basis.  See id. at 29-30; see also Reddick, 157 F.3d at 722 (holding that sporadic activities followed by periods of rest are not inconsistent with subjective complaints of severe pain).  Without such additional facts, Plaintiff's ability to care for his personal needs and his increased ability for certain physical activity during a segment of the alleged period of disability does not undermine his testimony that he cannot work, and is not a clear and convincing reason for finding Plaintiff less than fully credible.  See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."); Heine-O'Brien v. Astrue, 359 F. App'x 699, 701 (9th Cir. 2009) (citing Orn, 495 F.3d at 639) (the ability to care for personal needs does not necessarily indicate the ability to perform gainful employment); Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014) (quoting Reddick, 157 F.3d at 722) ("[r]ecognizing that 'disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations,' we have held that '[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility.") (alterations in original).

Additionally, Plaintiff's medical care providers have found that Plaintiff's daily activities were significantly restricted.  See AR at 460 (Dr. Vargas's finding that based on Plaintiff's April 28, 2015 appointment, he was unable to return to work for an undetermined time, and that he had the following restrictions: ""No bending, No stooping, No lifting."); AR 172-173 (VA's Rating Decision determining that Plaintiff was 100% disabled for his PTSD effective March 25, 2014).

Accordingly, the ALJ failed to provide the requisite clear and convincing reasons for finding Plaintiff not fully credible based on Plaintiff's daily activities. The ALJ also failed to establish that Plaintiff's daily activities are transferable to a work setting and are performed for a substantial part of the day and on a daily basis. See White, 2014 WL 4187823, at *7 (ALJ must "specify how plaintiff's ability to perform such tasks would translate into an ability to perform gainful employment."). The Court therefore disregards this reason for discounting Plaintiff's credibility.

### 3. Conservative Treatment

In determining Plaintiff's credibility, the ALJ also stated that Plaintiff "receives conservative treatment with prescribed medications for his medical conditions." AR at 27. A conservative course of treatment sometimes can justify the rejection of a claimant's testimony, at least where the testimony concerns physical problems. See, e.g., Tommasetti, 533 F.3d at 1040; Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999). In the present case, however, the ALJ's description of Plaintiff's mental health treatment as "conservative" mischaracterizes the treatment. From at least September 29, 2014 forward, Plaintiff has been under the continuous care of mental health professionals, including psychiatrists and psychiatric social workers. See, e.g., AR 399-602. This care has taken the form of frequent therapy sessions and the prescribing of antidepressant medications including Citalopram and Fluoxetine. Id. at 349, 359, 380, 382, 401. The ALJ's conservative treatment reason is not clear and convincing. See, e.g., Matthews v. Astrue, 2012 WL 1144423, at *9 (C.D. Cal. April 4, 2012); Mason v. Colvin, 2013 WL 5278932, at *6 (E.D. Cal. Sept. 18, 2013) (treatment not "conservative" where claimant took prescription antidepressants and anti-psychotic medication for almost two years and, though not hospitalized during this time, received mental health treatment by a psychiatrist and a psychiatric social

17cv25-BEN (BLM)

worker for a 14 month period); Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) ("it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation") (citations and quotations omitted). Notwithstanding that Plaintiff has not been hospitalized for his mental health issues, his medical records indicate that he has been compliant with his medication regimen of antidepressants, but still suffers from his PTSD and anxiety disorder. Accordingly, the Court finds that without more, Plaintiff's treatment has not been "conservative" for these issues.

### 4. Personal Observation

Further, the ALJ noted that "[Plaintiff] followed along and participated at the hearing in a sufficient manner." AR at 24. While an ALJ can include personal observations of a plaintiff during a hearing, a negative credibility determination based on those observations is proper only if it is supported by other evidence. See Garcia v. Astrue, 2013 WL 1797029, at *17 (S.D. Cal. Mar. 13, 2013) (citing Larsen v. Astrue, 2011 WL 3359676, at *9 (E.D. Cal. Aug. 3, 2011); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986)). Here, the ALJ failed to explain how Plaintiff's ability to participate in the administrative hearing related to his PTSD, anxiety disorder, and/or other medical impairments or undermined his testimony that he was not able to work. As summarized herein, Plaintiff's medical records consistently note that he has anxiety disorder and PTSD, which affect his ability to work, sleep, and function. See id. at 172-173, 400, 430, 437-443. As such, the objective medical evidence supports the symptoms alleged by Plaintiff and does not support the ALJ's credibility finding. See Kimzey v. Comm'r of Soc. Sec., 2011 WL 1230818, at *20 (E.D. Cal. Mar. 30, 2011) (finding that the ALJ's personal observations of plaintiff were not clear and convincing reasons supporting the adverse credibility determination where the ALJ "did not identify 'other' evidence that was consistent with his personal observation

and did not address how [p]laintiff's ability to participate in the hearing discredited [p]laintiff's evidence related to his claimed mental impairment, a claimed physical impairment or both."); Rojas v. Astrue, 2011 WL 2563178, at *7 (C.D. Cal. June 27, 2011) (finding that the ALJ erred by "discrediting plaintiff merely due to his attendance at and participation in his own hearing" and finding that the ALJ's reasoning was "akin to the so-called 'sit and squirm' test, in which an ALJ evaluates a plaintiff's credibility based on his or her demeanor at a hearing" and which the Ninth Circuit has disapproved of by noting that "[t]he fact that a claimant does not exhibit physical manifestations of [symptoms] at the hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations . . . are not credible.") (quotations omitted).

The Court concludes that none of the additional reasons provided by the ALJ constitute a clear and convincing basis for finding Plaintiff less than fully credible. Accordingly, the Court therefore **RECOMMENDS** that Plaintiff's Motion for Summary Judgment on this issue be **GRANTED**, and Defendant's Cross-Motion for Summary Judgment on this issue be **DENIED**.

**E.     Remand v. Reversal**

"The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court." McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). On the other hand, if the record has been fully developed such that further administrative proceedings would serve no purpose, "the district court should remand for an immediate award of benefits." Id.

17cv25-BEN (BLM)

In this case, the ALJ erred by failing to provide adequate justification for assigning less (or no) weight to the opinions of Plaintiff's treating physician, Dr. Vargas, and to the state agency medical examiner, Dr. Liss, the VA's determination that Plaintiff is 100% disabled, and for finding Plaintiff not fully credible. It is unclear from the record whether there are adequate reasons to discount the identified opinions and findings. This Court therefore **RECOMMENDS REVERSING** the decision of the ALJ and **REMANDING** for further consideration to address the errors noted above.

## CONCLUSION

For the reasons set forth above, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED** and Defendant's Cross-Motion for Summary Judgment be **DENIED**.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **November 20, 2017**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **December 4, 2017**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: 11/6/2017

Hon. Barbara L. Major
United States Magistrate Judge

17cv25-BEN (BLM)