
FILED
MAR 27 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE WESLEY OVERTON,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant[1]. | Case No.: 3:17-cv-00025-BEN-BLM<br><br>**ORDER:**<br><br>**(1) ADOPTING REPORT AND RECOMMENDATION;**<br><br>**(2) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**<br><br>**(3) DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT;**<br><br>**(4) DENYING DEFENDANT'S MOTION FOR RECONSIDERATION; and**<br><br>**(5) REMANDING FOR FURTHER PROCEEDINGS** |

---

[1] The Court substitutes Nancy A. Berryhill, the Acting Commissioner of Social Security, for Carolyn W. Colvin, the former Acting Commissioner of Social Security, as Defendant in this suit. *See* Fed. R. Civ. P. 25.

1

Plaintiff Lee Overton filed this action seeking judicial review of the Social Security Commissioner's denial of his application for disability insurance benefits. Plaintiff filed a motion for Summary Judgment. (Doc. No. 15.) The Commissioner filed a cross-motion for Summary Judgment. (Doc. No. 18.) On November 6, 2017, the Honorable Barbara L. Major issued a thoughtful and thorough Report and Recommendation ("Report") recommending that this Court grant Plaintiff's motion, deny the Commissioner's motion, and remand the case for further proceedings. (Doc. No. 21.) The Commissioner filed a timely motion for Reconsideration/Objection to the Report. (Doc. No. 22.)

Where a party files a timely objection to a Report and Recommendation, the Court reviews *de novo* those portions of the report or specific proposed findings or recommendations to which an objection is filed. 28 U.S.C. § 636(b)(1). Having conducted a *de novo* review, the Court adopts the Report and Recommendation.

## BACKGROUND

Plaintiff applied for Title II disability and disability insurance benefits claiming disability due to, among other impairments, post-traumatic stress disorder ("PTSD") and "chemical exposure" during operations in Saudi Arabia. Administrative Record (AR at 39, 167, 191.)[2] Plaintiff alleged the disability began on March 31, 2015 ("AOD"). (*Id.*) The claims were denied initially on August 4, 2015, and upon reconsideration on January 7, 2016, resulting in Plaintiff's request for an administrative hearing on January 14, 2016. (AR at 106-109, 113, 119.)

At the hearing before Administrative Law Judge Robin L. Henrie ("ALJ") on June 9, 2016, Plaintiff and an impartial vocational expert, Victoria Ray, testified as to Plaintiff's alleged disability. (*Id.* at 36-74.) In a written decision dated August 24, 2016, the ALJ determined that Plaintiff was not disabled under section 216(i) and 223(d) of the

---

[2] AR refers to the Administrative Record in case no. 3:17-cv-00025 found at Doc. No. 10.

Social Security Act. (*Id.* at 21-31.) On November 9, 2016, the Appeals Council found no basis for reviewing the ALJ's ruling, and the ALJ's decision became the final decision of the Commissioner. (*Id.* at 1-3.)

On January 6, 2017, Plaintiff filed this action seeking judicial review by the federal district court. (*Id.*) In his motion, Plaintiff argues that the ALJ's residual functional capacity ("RFC") finding was not supported by substantial evidence and was the product of legal error. (Pl.'s Mot. at 15.) In support of this contention, Plaintiff asserts four arguments. First, Plaintiff argues that the "ALJ ignored the opinion of a treating source, Dr. Vargas, and thereby fail[ed] to provide 'specific and legitimate' reasons for discounting the opinion of a treating source." (*Id.* at 15.) Second, the "ALJ fail[ed] to account for moderate limitations in concentration, persistence, and pace by reducing Plaintiff's RFC to 'simple work', which thereby deprived the Step 5 determination of substantial evidence in support." (*Id.* at 20.) Third, the "ALJ's analysis of Plaintiff's 100% Veterans Administration ("VA") disability rating fail[ed] to 'accurately reflect the approaches taken' in the Social Security Administration ("SSA") and VA disability systems." (*Id.* at 24.) And finally, the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's testimony regarding his alleged limitations. (*Id.* at 26.)

On November 6, 2017, Magistrate Judge Barbara L. Major issued a thoughtful and thorough Report. (Doc. No. 21.)

**STANDARD OF REVIEW**

An applicant may seek judicial review of a final agency decision pursuant to 42 U.S.C. § 405(g), 1383(c)(3). An ALJ's decision will be reversed by the reviewing court only if "it is based upon legal error or is not supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citation omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court must consider the record as a whole, weighing both the evidence that supports and detracts

from the ALJ's conclusion. *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews*, 53 F.3d at 1039. Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. (*Id.* at 1039-40.) The Court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 111 (9th Cir. 2012).

## DISCUSSION

Plaintiff argues the ALJ erred by (1) ignoring the opinion of a treating source, Dr. Vargas, and thereby fail[ed] to provide 'specific and legitimate' reasons for discounting the opinion of a treating source"; (2) failed to account for moderate limitations in concentration, persistence and pace by reducing Plaintiff's RFC to 'simple' work, which thereby deprived the Step 5 determination substantial evidence in support"; (3) the "ALJ's analysis of Plaintiff's 100% VA disability rating fail[ed] to 'accurately reflect the approaches taken' in the SSA and VA disability systems; and (4) failed to provide clear and convincing reasons for discounting Plaintiff's testimony regarding his alleged limitations.

### I. The ALJ Erred in Ignoring Dr. Vargas's Opinion

Plaintiff assigns error to the ALJ's evaluation for failing to provide legally sufficient reasons for ignoring Dr. Vargas's opinion while determining Plaintiff's RFC. Specifically, Plaintiff contends the "ALJ ignored the opinion of a treating source, Dr. Vargas, and thereby fail[ed] to provide 'specific and legitimate' reasons for discounting the opinion." (Pl.'s Mot. at 15.)

In the Commissioner's cross-motion for Summary Judgment (Doc. No. 18) and Motion for Reconsideration (Doc. No. 22), it is alleged that while the ALJ did not explicitly reject Dr. Vargas's opinion, "the ALJ credited the State agency doctors who explicitly reviewed Dr. Vargas's opinion and determined that it was not supported by the

objective medical evidence of record." (Def.'s Mot. at 9.) Thus, the Commissioner contends the ALJ's decision should be upheld.

The Court finds that the ALJ erred in ignoring Dr. Vargas's opinion.

A.  Failure to Mention Dr. Vargas's Opinion

The ALJ's failure to mention Dr. Vargas's treatment records and opinion constitutes harmful error. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). If a treating or examining physician's opinion is contradicted by another doctor's opinion, as here, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ meets this requirement by "'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

In this case, the medical records most relevant to determining Plaintiff's disability status come from Dr. Vargas since she was his primary care physician.[3] Dr. Vargas diagnosed several of Plaintiff's multiple health issues as well as provided follow-up care. She prescribed him multiple prescription medications and worked collaboratively with his psychiatrist, Dr. Emmit Lampkin. (Doc. No. 21 at 8-11.) She provided Plaintiff with "work excuse" letters and completed the necessary paperwork for his Family Medical Leave Act ("FMLA") leave. (AR at 348.) Moreover, Dr. Vargas's one-hundred

---

[3] Dr. Vargas was Plaintiff's treating physician who diagnosed him with multiple medical conditions that were ongoing and severe. These included (1) General Anxiety Disorder; (2) Chronic PTSD; (3) Irritable Bowel Syndrome; (4) Elbow joint pain; (5) Knee pain; (6) Shoulder joint pain; (7) Insomnia; (8) Gastroesophageal reflux disease; (9) Hematochezia; and (10) Chronic Colitis. (AR at 338-339, 348-349, 380, 406, 471.) Dr. Vargas prescribed Plaintiff Temazepam, Fluoxetine, Hyoscamine Sulfate, Trazodone, Mesolamine, and Omeprazole. (*See Id.* at 354.)

("100%") percent disabled finding due to PTSD is consistent with the VA and other examining physicians and providers findings as well. (*Id.* at 172-73.)

Here, the ALJ failed to discuss Dr. Vargas's opinion or even mention that she treated the Plaintiff for over a year during the relevant time period. Report and Recommendation ("Report") at 17. In response, the Commissioner cited to the following perceived inconsistencies in the record to justify the ALJ's action: (1) treatment notes show normal findings during the same period that Dr. Vargas . . . opined that Plaintiff could not bend, stoop, or lift (AR at 460); (2) despite Plaintiffs claim of severe colitis and gastrointestinal issues, medical evidence reflected his condition was under control[4] (*Id.* at 457); (3) in August 2015, Plaintiff only took Advil for the allegedly disabling physical pain instead of prescription pain medication (*Id.* at 474); (4) Plaintiff engaged in 60 to 90 minutes of weightlifting and 25 minutes of cardio six times a week (*Id.* at 585); and (5) He traveled to Mexico to see his sons and participated in hiking activities despite his impairments. (*Id.* at 569.)

Even assuming the aforementioned was correct, the ALJ failed to weigh, discuss, or evaluate the asserted inconsistencies with Dr. Vargas's opinion to provide "specific and legitimate reasons supported by substantial evidence in the record" to justify disregarding a treating physician's opinion. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Thus, on this record, the ALJ's reason for disregarding Dr. Vargas's opinion and treatment notes is not clear, convincing, or supported by substantial evidence.

B.  Failure to Give Any Deference or Weight to Dr. Vargas's Opinions

The ALJ gave no weight to the medical opinion of Dr. Vargas while giving great weight to non-treating consulting State agency medical examiners, Dr. Doig and Dr. Masters. The medical examiners "explicitly reviewed Dr. Vargas's opinion and

---

[4] On June 16, 2015, Nathaniel Ranney, M.D., reported that Plaintiff was "much improved" on medication (*Id.* at 457.)

determined that it was not supported by the objective medical evidence of record." (Def.'s Mot. at 9.)

An ALJ is not a medical professional. *Nguyen v. Chater*, 172 F.3d 31, 35 (9th Cir. 1999). While the ALJ has the duty to resolve conflicts in the medical evidence, the ALJ may not do so through speculation, or by substituting his opinion for that of a doctor. *See Nguyen*, 172 F.3d at 35. Agency regulations and rulings require weighing all opinions, "[r]egardless of its source" (20 C.F.R. § 404.14527(c)), including the opinions of agency consultants (*see* SSR 96-6p (ALJ "may not ignore" opinions from state agency medical and psychological consultants)) and thereby erred in failing to evaluate this opinion. *Sawyer v. Astrue*, 303 F. App'x 453, 455 (9th Cir. 2008) (ALJ reversibly erred in failing to weigh SAMC opinions). Further, the ALJ is required to "give deference to and accord some weight to [Dr. Vargas's] opinion." *Kinzer v. Colvin*, 567 Fed. App'x 529, 530 (9th Cir. 2014) (finding that an ALJ erred in failing to give any deference to or accord any weight to a treating physician's opinion despite finding the opinion non-controlling).[5]

Here, the ALJ failed on both points when she refused to consider Dr. Vargas's

---

[5] In assessing a disability claim, an ALJ may rely on medical "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). It is the ALJ's responsibility to resolve conflicts in presented medical opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). In doing so, the Commissioner applies a hierarchy of deference to these three types of opinions. *Lester*, 81 F.3d at 830 (citation omitted). The medical opinion of a claimant's treating physician is given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. (*Id.* § 404.1527(c)(2)-(6)).

opinion or accord it any weight, instead relying on State agency medical examiners findings to determine the Plaintiff's SSI disability eligibility. In this situation, the ALJ needed to identify the conflict between medical opinions and articulate specific and legitimate reasons for disregarding Dr. Vargas's opinion.

Thus, the Court finds that the ALJ erred by failing to provide specific, legitimate reasons supported by substantial evidence for ignoring and failing to attribute any weight to Dr. Vargas's opinions.

## II. The ALJ Erred in Failing to Account for Moderate Limitations in Concentration, Persistence, and Pace by Reducing Plaintiff's RFC to 'Simple' Work

Plaintiff contends that the "ALJ fail[ed] to account for moderate limitations in concentration, persistence, and pace by reducing Plaintiff's RFC to 'simple' work, which thereby deprived the *Step Five* determination of substantial evidence in support." (*Id.* at 20.) The RFC reflects the most an individual can do. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ considers all medically determinable impairments, including those that are not "severe," and evaluates "all of the relevant medical and other evidence," including the claimant's testimony. (*Id.*) An ALJ may rely on the testimony of a Vocational Expert ("VE") to determine whether a claimant retains the ability to perform past relevant work at *Step Four*, or other work in the national or regional economy at *Step Five*. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The ALJ is required to include only those limitations which are supported by substantial evidence in the hypothetical posed to a VE. *See id.* at 1163-65. "Conversely, an ALJ is not free to disregard properly supported limitations." *Robbins v. Soc. Sec. Admin.* 466 F.3d 880, 886 (9th Cir. 2006). In other words, limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock*, 240 F.3d at 1163-65.

Here, Plaintiff argues the ALJ "erred [in failing to explicitly acknowledge Dr. Liss's opinion]" thereby preventing the only opinion in the record containing moderate

8

limitations in Concentration, Persistence, and Pace ("CPP") to be included in the RFC analysis. (Def.'s Mot. at 10-12.) As a result, the ALJ reduced moderate limitations on CPP to "simple" unskilled work in Plaintiff's RFC without any opinion evidence explicitly supporting her decision, thereby depriving the RFC and *Step Five* determination of substantial evidence in support. *Brink v. Comm'r SSA*, 343 Fed. App'x 211, 212 (9th Cir. 2009).[6]

The Commissioner concedes "the ALJ may have erred [in failing to explicitly acknowledge Dr. Liss's opinion]. However, because the "ALJ cited to substantial evidence in support of Plaintiff's RFC findings by citing to the treatment notes indicating benign mental status examination findings throughout the relevant period, any error is harmless as Dr. Liss's opinion supports the ALJ's decisions.[7] (Def.'s Mot. at 10-12.) The Court disagrees.

The ALJ's failure to properly consider Dr. Liss's opinion was not harmless because the opinion is directly relevant to the ultimate issue of whether Plaintiff can perform light work. *Sawyer v. Astrue*, 303 F. App'x 453, 455 (9th Cir. 2008). Moreover,

---

[6] Dr. Liss opined that Plaintiff's anxiety disorders met the following criteria: (1) Plaintiff had "mild" restrictions of activities of daily living; (2) Plaintiff had "moderate" difficulty in maintaining social functioning; and (3) Plaintiff had "moderate" difficulty in maintaining concentration, persistence or pace." (*Id.*) Dr. Liss noted that "ADLs indicate limitations in CPP and social which are considered reasonable given MDIs established in MER. . . Overall, the totality of evidence indicates that claimant would be capable of simple work tasks with limited public contact." (*Id.* at 96.) Dr. Liss explained that "[t]he claimant's mental condition is not currently of listing level severity but does impose moderate functional limitations." (*Id.* at 102.) Dr. Liss further opined that Plaintiff would "function best in work situations that preclude ongoing interaction with the public" and that Plaintiff "may exhibit variable difficulty in getting along with co-workers due to psychiatric sxs; therefore a work environment with low social stimulation is recommended." (*Id.* at 103.)

[7] Defendant contends that although Dr. Liss found "moderate limitations in Plaintiff's ability to maintain concentration and attention for extended periods," ultimately he found that "Plaintiff could attend to and perform simple tasks for 2+ hours without special supervision." (Def.'s Mot. at 12.)

the inaccurate RFC prevented the vocational expert from identifying jobs that may be available to the Plaintiff.

As such, because the ALJ failed to craft an RFC accounting for all of Plaintiff's limitations supported by substantial evidence in the record and the ALJ is directed to reevaluate this entire matter on remand.

**III. The ALJ Erred in the analysis of Plaintiff's 100% VA Disability Rating**

Third, Plaintiff contends the "ALJ's analysis of Plaintiff's 100% VA disability rating fail[ed] to 'accurately reflect the approaches taken' in the SSA and VA disability systems." (*Id.* at 24.) Defendant argues the ALJ properly considered evidence of Plaintiff's VA disability rating "because the ALJ validly determined that the rating was not useful to the disability analysis because it was done in April 2014, nearly a year before Plaintiff even claimed he was disabled." (*Id.* at 14.) Defendant further argues that the VA "did not have the benefit of the full record of evidence, including treatment records, State agency doctor's opinions, Plaintiff's subsequent work history, activities of daily living, and the vocational expert testimony." (*Id.*)

"[A]n ALJ must ordinarily give great weight to a VA determination of disability" because there is a "marked similarity between these two federal disability programs." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002); *accord McLeod v. Astrue*, 640 F.3d 8812, 888 (9th Cir. 2011). However, because "VA and SSA criteria for determining disability are not identical . . . the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." (*Id.*)

On April 30, 2014, the VA rated Plaintiff 100% disabled due to his psychiatric disorder, Posttraumatic Stress Disorder ("PTSD"). (Pl.'s Mot. at 22-24.) In reaching this determination, the VA found:

> Plaintiffs condition caused a persistent danger of hurting himself and others; difficulty in adapting to work and stressful circumstances; suicidal ideation and impaired impulse control; difficulty in adapting to a work like setting including establishing and maintaining effective work and social

relationships; mild memory loss; depressed mood; chronic sleep impairment; anxiety; and occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal). (AR at 172-73.) Specifically, the VA found that Plaintiff had a disability rating of 100% for PTSD and 30% for contact dermatitis and maculopapular rash. (*Id.* at 172-75.)

Despite the VA's significant findings and 100% disabled rating for Plaintiff, the ALJ discounted the VA's disability determination arguing "[t]he criteria for the two separate disability programs have completely different standards for establishing disability." (*Id.* at 30.) "The VA rating of disability does not necessarily compel the undersigned to reach an identical result." (*Id.*) In fact, the Social Security Administration "uses a more 'rigorous standard' wherein the subjective complaints must be reasonably consistent with the objective medical findings."

Here, although the ALJ did mention the VA's disability rating, she did not provide persuasive, specific, and valid reasons supported by the record for assigning "less weight" to the rating. To the extent the ALJ asserts that she assigned less weight to the VA disability rating because the criteria used by the VA is not the same as the one used by the Social Security Administration, this is not a valid reason to discount the VA's disability rating. (AR at 34.) When the ALJ gives less weight to a VA determination, as here, she shall provide "persuasive, specific, valid reasons for doing so that are supported by the record." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

When the ALJ considered the VA's determination, she specifically accorded it little weight for two reasons: (1) because the VA disability standards differ from the SSI disability standards; and (2) because the VA did not have the benefit of more recent medical evidence before her.[8] (AR at 167-91.)

---

[8] The ALJ specifically pointed to "the opinions of the State agency medical and psychological consultants, evidence of the claimant's work history, and post-resignation activities, and the input of the vocational expert" and then further pointed to other

11

In *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009), the court of appeals found that the ALJ ran afoul of *McCartey* insofar as she "distinguished the VA's disability rating on the general ground that the VA and SSA disability inquiries are different." So too here. The ALJ erred to the extent that she relied on the difference between the VA and SSA disability determinations.

In *Valentine*, the court went on to find that "[t]he ALJ was justified in rejecting the VA's disability rating on the basis that she had evidence that the VA did not." (*Id.*) The ALJ there rejected the VA determination because it relied on a treating physician's opinion that the ALJ had properly rejected. *Valentine* held that this was a persuasive, specific, and valid reason supported by the record for according little weight to the VA determination. That is not the case here. Plaintiff filed a Title II application for disability and disability insurance benefits alleging disability beginning on March 31, 2015, due to his PTSD, among other illnesses, injuries and conditions. (*See* AR at 167-68.) Plaintiff concedes in his Motion that the VA rating was issued approximately eleven months prior to Plaintiff's resignation from his job at the U.S. Postal Service. (Pl.'s Mot. at 26.) However, Plaintiff further argues that the PTSD ultimately resulted in Plaintiff's resignation eleven months later, and the ALJ failed to set forth substantial evidence supporting her decision to discount the 100% VA rating merely because Plaintiff continued to work. (*Id.*) Neither the difference between the VA and SSA disability standards nor a discrepancy with a PTSD onset date because Plaintiff continued to work constitute a persuasive, specific, valid reason for discounting Plaintiff's VA determination, supported by the record. Thus, the ALJ erred in giving little weight to the VA determination.

///

---

contradicting opinion evidence (delineated in AR 28-29), Plaintiff's extensive daily activities (delineated in AR 28), and the VA's own progress notes after the disability rating was issued (AR 29).

## IV. The ALJ Erred in Discounting Plaintiff's Testimony Regarding His Limitations

Finally, Plaintiff contends that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's testimony regarding his alleged limitations. (*Id.* at 26.) In assessing a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a *"Two-Step"* analysis. 20 C.F.R. § 404.1529, 416.929. The *first stage* is a threshold test in which the claimant must present objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the *second stage* of the analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). Factors the ALJ may consider when making such determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in the testimony. *Ghanim*, 763 F.3d 595 at 1163. In addition, conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

When the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Here, neither party contests the ALJ's determination that Plaintiff has the following impairments: "post-traumatic stress disorder, generalized anxiety disorder, sleep apnea, right shoulder degenerative joint disease, and right knee degenerative joint disease." (AR at 22; *see also* Pl.'s Mot.; Def.'s Mot.) Because the ALJ concluded Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," a finding which is not contested by either party, the first prong of the ALJ's inquiry regarding Plaintiff's subjective symptoms is satisfied. (*See* AR at 26.) Further, neither party alleges that the ALJ found that Plaintiff was malingering. (*See* Pl.'s Mot.; Def.'s Mot.) Thus, the Court must determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective claims regarding his symptoms.[9] *See Lingerfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

### A.  Activities of Daily Living

Plaintiff argues that the ALJ erred in finding that his allegations about the severity of his impairments were inconsistent with his activities of daily living. (Pl.'s Mot. at 27.) Specifically, he asserts the ALJ incorrectly determined that Plaintiff's subjective complaints were "out of proportion with the record as a whole." (AR at 26.)

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v.*

---

[9] With regards to Plaintiff's claim that he is unable to "work full-time due to symptoms and limitations," the ALJ stated: The medical evidence in this case does not fully support the claimant's allegations to the extent alleged. Upon determining the residual functional capacity, the undersigned does not adopt all of the claimant's subjective allegations concerning the intensity, persistence, and limiting effects of symptoms mainly because they are out of proportion with the record as a whole, and therefore not consistent with the medical evidence. (AR at 27.)

*Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick v. Chater*, 157 F.3d 715, 722, (9th Cir. 1998), and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping ... does not in any way detract from his credibility," *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick*, 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. (*Id.* at 722-23.)

Here, the ALJ contends Plaintiff's testimony is contradicted by the fact he performs certain daily activities that are inconsistent with the symptoms alleged. Specifically, Plaintiff testified that he painted his mother's house, worked on craft projects, hikes with the Canyoneers or by himself, traveled to Mexico, biked, lifted weights and reading. (AR at 28, 46, 560, 561, 568, 579.) The Commissioner argues these extensive activities of daily living clearly belie Plaintiff's claims of total disability and the R & R's findings that Plaintiff had extreme mental limitations. However, none of Plaintiff's activities is inconsistent with his claimed physical and mental limitations. Plaintiff can engage in all of the basic activities noted and still experience PTSD, anxiety, fatigue, and "serious memory deficit", particularly given that he testified his symptoms fluctuate, often unpredictably, from mild to severe. (AR 47-48, 66-67.) Thus, because Plaintiff's daily activities do not contradict his testimony, Plaintiff's level of activity is not a legitimate ground for discrediting his testimony. *See, e.g., Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

Nor are Plaintiff's daily activities indicative of transferable work skills such that they can be the basis of an adverse credibility determination. Under Ninth Circuit law, "if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific

findings relating to those activities." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, there is no indication that Plaintiff's daily activities involve skills that are transferable to a work setting. Indeed, the ALJ makes no argument or specific findings on this point, and so the transferability of Plaintiff's daily activities is not a legitimate grounds for rejecting his testimony.

The Court finds that this reason is not a clear and convincing reason supported by substantial evidence to discount Plaintiff's credibility.

B. Conservative Treatment

The ALJ also found that Plaintiff received "conservative treatment with prescribed medications for his medical conditions." (AR at 27.) Specifically, the Commissioner contends the ALJ was delineating what treatment regimen she found inconsistent with Plaintiffs allegedly disabling right knee and shoulder impairments which were treated with medication in place of more proactive measures. (AR at 26.) Moreover, the ALJ noted the successful treatment of Plaintiff's colitis using steroids in June 2015, as well as the treatment of his sleep apnea utilizing a CPAP device to further illustrate Plaintiff's history of successful conservative treatment. (AR at 27.)

While the ALJ notes some of Plaintiff's physical improvements with conservative treatment, the ALJ fails to take into account all of Plaintiffs numerous medical issues by merely focusing on his physical impairments. A conservative course of treatment sometimes can justify the rejection of a claimant's testimony, at least where the testimony concerns only physical problems. *See, e.g., Tommasetti*, 533 F.3d at 1040; *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999). However, Plaintiffs situation is far more complicated.

Here, in addition to being treated for his physical impairments, from at least September 29, 2014, forward, Plaintiff has been under the continuous care of mental health professionals, including psychiatrists and psychiatric social workers. (AR at 399-602.) This care has taken the form of frequent therapy sessions and the prescribing of antidepressant medications including Citalopram and Fluoxetine. (*Id.* at 349, 359, 380,
16

3:17-cv-00025-BEN-BLM

382, 401.) His medical records indicate that he has been compliant with his medication regimen of antidepressants, but still suffers from his PTSD and anxiety disorder. (*See* Report at 38-39.) Accordingly, the Court finds that without more, Plaintiff's treatment has not been "conservative" on these issues.

The Court does not find that this is a clear and convincing reason supported by substantial evidence for discrediting Plaintiff's credibility.

C. Personal Observation

While an ALJ can include personal observations of a plaintiff during a hearing, a negative credibility determination based on those observations is proper only if it is supported by other evidence. *See Garcia v. Astrue*, 2013 WL 1797029, at *17 (S.D. Cal. Mar. 13, 2013) (citing *Larsen v. Astrue*, 2011 WL 3359676, at *9 (E.D. Cal. Aug. 3, 2011); *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986)).

Here, the ALJ noted that "[Plaintiff] followed along and participated at the hearing in a sufficient manner." (AR at 24.) However, the ALJ failed to explain how Plaintiff's ability to participate in the administrative hearing related to his PTSD, anxiety disorder, and/or other medical impairments or undermined his testimony that he was not able to work. Nevertheless, the Commissioner asserts the ALJ did not cite to his personal observations of Plaintiff at the hearing when evaluating Plaintiff's symptoms, but in fact cited to the proper considerations and supported each with substantial evidence. (Report 38; AR at 25-29, 53-54, 56-58.) The Commissioner's argument is unavailing.

The ALJ's observation in this instance is less detailed than in those cases suggesting that personal observations can form a portion of the credibility analysis-it is not clear from the decision what it was about Plaintiff's demeanor that made him unpersuasive and on which issues he failed to persuade. Thus, while Plaintiff's demeanor can play some role in the credibility analysis, it is not, in this instance, a dispositive one.

The Court does not find that this is a clear and convincing reason supported by substantial evidence for discrediting Plaintiff's credibility.

///

## V. **Remand Is Appropriate**

The decision "whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court." *Stone v.* Heckler, 761 F.2d 530, 533 (9th Cir. 1985). Generally, "[w]hen an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012), quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

Here, the ALJ erred when evaluating the medical opinion evidence. The ALJ's decision, therefore, is not supported by substantial evidence. In light of the aforementioned, this Court remands for further proceedings.

## CONCLUSION

Having conducted a *de novo* review of the Report, the parties' cross-motions for summary judgment, Defendant's motion for reconsideration/objections to the Report, and relevant portions of the administrative record, the Court concludes that Judge Major's reasoning is sound. Therefore, the Court **ADOPTS** the Report. (Doc. No. 21.) *See* 28 U.S.C. § 636(b)(1). Plaintiff's motion for Summary Judgment is **GRANTED**. (Doc. No. 15.) Defendant's cross-motion for Summary Judgment and Motion for Reconsideration are **DENIED**. (Doc. Nos. 18-22.) Plaintiff's disability benefits application is **REMANDED** to the Social Security Administration for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

DATED: March 14, 2018

HON. ROGER T. BENITEZ
United States District Judge